## HEBERT et al. v. UNITED STATES.

### No. 102.

District Court, E. D. Louisiana, New Orleans Division.

June 11, 1941.

Henriques & Mayo and J. C. Henriques, all of New Orleans, La., for plaintiff Mrs. Nicholas Hebert and others.

Fred G. Benton and Dudley L. Weber, both of Baton Rouge, La., for plaintiffs Mr. & Mrs. Dossie E. Worrell and others.

L. V. Cooley, Jr., of Slidell, La., and J. Skelly Wright, of New Orleans, La., for United States of America.

CAILLOUET, District Judge.

In the early evening of April 28, 1936, just before dusk but with automobile lights

burning, a fearful motor accident occurred on U. S. Highway #61, between New Orleans and Baton Rouge, a short distance from Lutcher, La., and in the Parish of St. James. A truck owned by the United States of America and then and there being operated by the Corps of Engineers, War Department, through two employees of said government agency, who were acting in the course of their employment and within the scope of their authority, collided with a Ford sedan occupied by four of the children of Mrs. Nicholas Hebert, who, with their mother and their three sisters riding ahead in a larger car, a hired Packard sedan, were all returning from the funeral and burial of the husband and father of the family which had taken place a few hours before.

Immediately following the impact between the two vehicles, the truck continued on its way a short distance and then collided with a truck of one W. F. Cobb.

As a result of the said two collisions, Vernon Hebert, who was driving the Ford sedan, was instantly killed, and his sister Virges, who was seated on the rear seat in line with him, was so seriously injured as to die within an hour or so while being conveyed to a New Orleans hospital; and their sister, Anna Lee Hebert, who was seated to the right of the driver, was painfully injured, whilst their brother, Nary Hebert, was catapulted out of the sedan from his sitting position on the rear seat to the right of his fatally injured sister, Virges, but was fortunately spared serious injury; the two employees in the government truck were burned to death; and of the three occupants of the Cobb truck, the driver thereof, one Edward Leon Worrell, was pinned by the crushed steering wheel and also burned to death; Earl Ray McClure was so seriously injured internally that he died at the New Orleans Charity Hospital 34 hours later, and the owner, Cobb, suffered serious bodily injuries.

Mrs. Nicholas Hebert, the mother of the deceased Vernon and Virges Hebert, Anna Lee Hebert, Mr. and Mrs. Dossie E. Worrell, parents of the deceased Edward. Leon Worrell, Mr. and Mrs. C. B. McClure, parents of the deceased Earl Ray McClure, and W. F. Cobb, upon the enactment of the Private Bill No. 721, of the 75th Congress of the United States, Act June 25, 1938, Chap. 662, 3rd Session, 52 Stat. 1398, entitled:

"An Act Conferring jurisdiction upon the United States District Court for the Eastern District of Louisiana to hear, determine, and render judgment upon the claims of Anna Lee Hebert, Mrs. Nicholas Hebert, Mr. and Mrs. Dossie E. Worrell, Mr. and Mrs. C. B. McClure, and W. F. Cobb.", and approved June 25, 1938, joined in this action against the United States of America.

Each sues for the maximum amount authorized by the said Act of Congress. The widowed Mrs. Hebert, who is 53 years of age, seeks to recover the aggregate sum of $410 expended by her for the burial of her dead boy and girl, and for their deaths, and it is in evidence that her chief support came from these two children; Vernon, 24 years old, unmarried and living in the family household gave her never less than $50 per month out of his wages of $25 per week, and Virges, 22, likewise unmarried and so living, earned $15 per week and brought the whole to her mother, who supplied her therefrom with her necessary dress and other requirements.

It is also in evidence that the dead husband and father, whose funeral had thus taken place but a few hours before the accident, had been a helpless paralytic for 8 months next immediately preceding his death and had been unable to work for several years previous thereto. The son, Nary, never had a steady job, the mother testified, and contributed nothing, and neither did one married daughter. The daughter Anna Lee earned $8 or $9 per week and brought it all to her mother under the same conditions as did the deceased Virges; Margery Anna, another daughter in the house, who is now married but still lives with her mother whom she helps support, usually took care of the domestic duties in and about the family home although she did, at times, work out for small wages which she also contributed to the family maintenance; the youngest daughter, Eugenie, was still at school.

Anna Lee Hebert, the injured daughter, who is now 25 years old and unmarried, sues to recover $4,000 for her hurts. One may infer from her testimony that she was thrown out of the wrecked Ford sedan in which she had been riding with her deceased brother Vernon and Virges, and her other brother, Nary, since she says that her first recollection of anything after the collision is that she found herself arising

from the ground and realizing that she was hurt and bloody about the face. She was brought to the Charity Hospital in New Orleans for medical attention and the hospital records in evidence show that her chief injury was to her right eye, the white outer coat covering the eyeball except the cornea, and the cornea itself being lacerated; in addition to this, the records show traumatic injury of the eyelids and abrasions on her face. She testified that two stitches each were necessary for hurts to her upper and lower lip, respectively, one on her nose and one on a knee, although the hospital record makes no mention of this. Her injured right eye was promptly operated on the night of the accident, under local analgesia. She was discharged from the hospital on the eighth day, but thereafter received attention as an "out patient" at the hospital clinic.

The record definitely establishes that her right eye presents an old scar of corneal laceration, the pupil being rendered irregular in shape, and enlarged; corneal astigmatism is considerable and permanent as a result of the injury and scar; and vision is reduced 40%.

W. F. Cobb, who was 58 years of age at the time of the accident, sues to recover $5,000 for injuries sustained and for damages caused him by the wrecking of his truck.

His physical injuries were laceration of scalp, fracture and laceration of nose, an incomplete fracture of the acromion process of the right scapula, without displacement, a small V-shaped fracture of the skull in the right frontal region, without depression, and severe shock which kept him in a bewildered, hazy mental state for a considerable time thereafter. He was admitted to Our Lady of the Lake Sanitarium, in Baton Rouge, at 10:13 P.M. of April 28th, 1936, or about 3½ hours after the collision, as a "walking case" but, talking "at random", the hospital record recites. According to this record, his discharge took place on May 5, 1936.

His wrecked Ford 1½ ton truck, which was burnt up, had cost him, he testified, "a little better than $1100.00" some three months before, and his insurance recovery thereon was $515; making due allowance for depreciation in value during the first three months of his ownership, one may safely say that the net loss at issue is approximately $300.

Mr. and Mrs. C. B. McClure, the parents of the deceased 20-year-old Earl Ray McClure, who died in the Charity Hospital at New Orleans from internal injuries suffered as the result of the colliding of the government truck with the Cobb truck, sue for $5,000.

The father, who is now earning a bare support for his family as a worker on public welfare projects, has been sickly for 5 years, a sufferer from an ulcerated stomach and kidney and bladder troubles which brought him to hospitals in New Orleans and Baton Rouge no less than 3 times during the year 1940, and as much as 7 times during the three years 1938, 1939 and 1940, was just up from a sick bed, and was without income whatever at the time of his son's death. Six of his children were living in the family household, located on rented property, but none were working at any time and contributing to the support of the family except Earl Ray, he being the oldest; his earnings were $2 to $2.25 each working day, and the greater part thereof he gave to his mother for support of the family.

The McClures also operate a small grist mill on toll; from which venture results tollage to them in corn, sufficient to supply their needs for the making of corn bread and the feeding of their chickens.

Both parents witnessed the apparently intense suffering of their fatally injured son in the hospital, which, both testify, necessitated his being strapped to his bed in order to prevent violent movement of his pain-racked body.

Of the two plaintiffs yet to be named, Mr. and Mrs. Dossie E. Worrell, who sued to recover $5,000 for the death of their 19-year-old unmarried son, Edward Leon Worrell, the father died on May 3, 1939 and his right of action under Art. 2315 of the Louisiana Revised Civil Code having perished with his death, the action as to him has abated. Chivers v. Rogers, 1898, 50 La.Ann. 57, 23 So. 100; Kerner v. Trans-Mississippi Terminal R. Co., 1925, 158 La. 853, 104 So. 740; Castelluccio v. Cloverland Dairy Products Co., Inc., 1928, 7 La.App. 534.

Mrs. Worrell's dead son had been living with plaintiff, W. F. Cobb, since the age of 16 years, having been charitably taken in and cared for in his home, by way of assistance to the Worrells who appear to have enjoyed but a scanty store of the

world's goods. The couple had four other children at home, and they still reside with their now widowed mother; they were younger than the deceased Edward Leon, and at the time of his death in 1936, were aged 18, 16, 14 and 3 years respectively. Charles, the eldest of these four children, suffers from kidney trouble and is physically unable to work; Robert, the next in point of age and now 21 years old, works and assists in supporting the family. The two remaining children are girls, now 18 and 8 years of age respectively; both are at school. Mrs. Worrell describes her financial condition as "very poor"; and as to this, there seems to be no doubt.

It may be said that the evidence establishes that at the time next immediately preceding the fatal accident . the hired Packard sedan, the Hebert Ford sedan and the Cobb truck, were traveling towards New Orleans, in that order, at the rate of 35 miles per hour, and distant one from the other approximately 100 feet; they were all on the right hand and proper half of the concrete highway, or on the Mississippi River side thereof.

Traveling in the opposite direction or headed from New Orleans towards Baton Rouge, was a tarpaulin-covered truck which was followed in close proximity by the "engineers' truck" that became involved in the collision. These two trucks were running on the northerly half of the highway or on the lake side thereof.

The evidence further establishes that just about the time and place that the Packard sedan, the Hebert Ford sedan and the Cobb truck, on the southerly side or half of the pavement, were to meet the tarpaulin-covered truck and the engineers' truck on the northerly half, the driver of the engineers' truck suddenly made an attempt to pass ahead of the tarpaulin-covered truck and cut out from behind said truck and partially across the highway's center line, which almost brought about a collision with the oncoming Packard sedan, whose driver promptly swerved it to his right and partly off of the concrete on to the wide dirt shoulder to his right, to avoid being struck; the engineers' truck as promptly drew away from the Packard but then continued on its slightly diagonal but forward course towards the southerly edge of the pavement, partly south of the center line of the highway and alongside the tarpaulin-covered truck's line of travel on the north half of the road; Vernon Hebert, at the wheel of the on-coming Ford sedan, also as promptly, tried to avoid the threatened collision but had no more time than sufficient to drive the forward part of the Ford slightly off of the southerly edge of the concrete and on to the wide dirt shoulder in a diagonal course, before the engineers' truck struck the sedan with great force and then continued further until, still with a considerable speed, it ran almost entirely off of the southerly edge of the pavement, diagonally, and collided with the forward end of the Cobb truck which had been driven completely off and several feet away from the southerly edge of the concrete highway, in a vain endeavor to avoid contact with the on-coming engineers' truck.

In the first collision, the engineers' truck completely missed the front bumper of the Ford sedan, presumably because the truck was moving diagonally towards the sedan which at that time was, itself, in a counter-diagonal position with its forward end about running off of the southerly edge of the pavement. But the truck struck and crushed sidewise and rearward the Ford's front fender at and from a point located further back than the radiator shell, which remained uninjured; partially tore off outwardly and away from the hub in a rearward direction (and did not crush it inward and against the chassis) the left front wheel; sheared off the left running board, the left side of the sedan body and the greater part of its top; and tore off the left rear wheel.

In the second collision, the impact was so hard that the left forward end of the Cobb truck was badly crushed; in fact, so much so that the driver, Edward Leon Worrell, was pinned between the wrecked front and steering wheel and the back of the front seat in such a manner as to make it impossible to save his inert body from burning to death.

### Findings of Fact.

1. The double collision and fatal accident was caused wholly, solely and proximately by the grossly negligent operation of the War Department truck at a recklessly high rate of speed from off of its own proper or northerly half of U. S. Highway No. 61 on to the then occupied southerly half of said highway and into the path thereon of the Packard sedan, the Hebert Ford sedan and the Cobb truck, which were closely approaching said War Department truck and were plainly visible;

neither driver of said three on-coming vehicles participated in the creation of the emergency which then and there confronted the driver of the War Department truck and each of said three drivers promptly took appropriate measures best calculated to avoid, if possible, the threatened collision; nor were any of the plaintiffs herein contributorily negligent, as was alleged by the defendant in its answer.

2. Wholly, solely and proximately by reason of such gross negligence,

(a) The plaintiff, the newly-widowed Mrs. Nicholas Hebert, suffered the loss of two children who were of age, unmarried and her main support, and was caused a funeral and burial expense of $410;

(b) The plaintiff, Anna Lee Hebert, was caused physical and mental pain and suffering and a permanent injury and scar to her right eye, with a 40% loss of vision in said eye;

(c) The plaintiff, W. F. Cobb, was caused a great shock to his nervous system, a laceration of his scalp and a small fracture of his skull in the right frontal region, without depression, a laceration and fracture of the nose, fracture of the shoulder (from the evidence it is not quite clear, which shoulder), without displacement. He apparently made a normal recovery, and was left with no permanent injury. He was also caused a net loss of approximately $300, by reason of the wrecking and burning of his truck, taking into consideration its depreciation in value during the three months of service and the insurance recovery, as against the truck's original cost price;

(d) The plaintiffs, Mr. and Mrs. C. B. McClure, suffered the loss of their unmarried 20-year-old son who materially contributed to their support, the father being very sickly and, at the time of his son's death, without income whatever;

(e) The plaintiff, the widowed Mrs. Dossie E. Worrell, with her now deceased husband suffered the loss of their unmarried 19-year-old son; he had lived away from home by direction of his parents since the age of 16 years, and had been in no position to assist them but was all that Mrs. Worrell expected of him as her child.

### Conclusions of Law.

The plaintiffs are entitled to recover from the defendant compensatory damages as follows, to-wit:

| | |
|---|---|
| Mrs. Nicholas Hebert | $10,000.00 |
| Anna Lee Hebert | $ 1,750.00 |
| W. F. Cobb | $ 2,300.00 |
| Mr. & Mrs. C. B. McClure | $ 5,000.00 |
| Mrs. Dossie E. Worrell | $ 2,500.00 |

and judgment shall, therefore, be entered accordingly.